1

2

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6                                        )
7                                        )
   JON BUCHWALD,                         )    No. 04-01833 SC
8                                        )
            Plaintiff,                   )
9                                        )    ORDER RE: DEFENDANT
       v.                                )    UNITED STATES' MOTION
10                                       )    FOR SUMMARY JUDGMENT
                                         )
11                                       )
   METROPOLITAN TRANSPORTATION           )
12 COMMISSION, STATE OF CALIFORNIA,      )
   CITY OF SAUSALITO, COUNTY OF MARIN,   )
13 O.C. JONES AND SONS, INC., U.S.       )
   DEPARTMENT OF INTERIOR, NATIONAL      )
14 PARK SERVICE, GOLDEN GATE NATIONAL    )
   RECREATION AREA, DOES 2 through       )
15 100, inclusive.                       )
                                         )
16          Defendants.                  )
                                         )
17 _____      )

18

19

20 **I.    INTRODUCTION**

21       Defendant United States ("Defendant" or "the government")

22 moves for summary judgment pursuant to Federal Rule of Civil

23 Procedure 56.  For the reasons explained herein, this Court hereby

24 GRANTS Defendant's motion.

25

26 **II.   BACKGROUND**

27       In April 1999, the National Park Service commissioned a study

28 to examine traffic patterns and overall safety of certain areas of

the Golden Gate National Recreation Area ("GGNRA"), including the intersection of Bunker Road and Lamoreaux Drive in the Marin Headlands.  Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 2 ("Pl. Mem.").  A report issued following completion of the study ("report") concluded that the 85th percentile speed of traffic traveling westbound on Bunker Road was 35 miles per hour, in excess of the 25 mile per hour speed limit posted in that area.  Id.; Defendant United States' Memorandum in Support of Motion for Summary Judgment at 3 ("Def. Mem.").  The report further concluded that the stop signs presently in place at the intersection were an ineffective means of controlling traffic proceeding through the intersection.  Id. at 3-4.  As a means of better controlling traffic at the Bunker Road/Lamoreaux Drive intersection, authors of the report recommended removing the stop signs and installing a raised intersection instead.  Id. at 4.

In February 2000, Azteca Construction received a contract to install asphalt at the intersection of Bunker Road and Lamoreaux Drive, creating the raised intersection called for in the report. Id.  Azteca completed the installation of one and one-half vertical inches of asphalt in the intersection, tapering down to level with the road over a span of two feet, as was called for by the plans.  Id. at 4-5.  As a part of the construction project, a "BUMPS" sign warning of the raised intersection was installed approximately 98 feet in advance of the raised portion of the intersection, and white diagonal lines were painted onto the surface of the road at the entrance of the intersection.

2

Declaration of Thomas Schultz ¶9 ("Schultz Dec.").  A traffic cone was also present at the intersection, although the parties dispute whether it was in such a position or posture as to be effective in warning of the speed bump.  Compare id. with Def. Mem. at 15.

Sometime thereafter, however, the Regional Coordinator for the Federal Land Highway Program, David Kruse, received a report indicating that the raised intersection was ineffective in controlling the speed of traffic traveling through the intersection.  Declaration of David Kruse, ¶10 ("Kruse Dec.").

Acting on advice from the project manager of the original study, Kruse produced plans to add an additional one and one-half inches of asphalt to the raised intersection while increasing the slope of the intersection to comply with the three inch vertical rise over one foot horizontal span ("3:1 ratio") originally recommended by the report.  Id. ¶10-11.  These plans were executed in September 2000 by a second contractor, Explore General.  Id.  The new and improved intersection did not meet with the approval of some motorists, however, and Mr. Kruse began to receive reports that vehicles traveling through the intersection were experiencing their vehicles "bottom out" upon passing over the raised asphalt sections.  Id. ¶12.  Mr. Kruse then requested and obtained additional funding to have Explore General remove thin layers of asphalt from the raised intersection in an effort to achieve some middle ground between having ineffective speed bumps and speed bumps that could cause damage to vehicles.  Id. ¶13.

Explore General evidently thought this work was to take place on Friday, November 2, 2001, because on that day they sent workers

3

United States District Court
For the Northern District of California

from a subcontractor to the job site to perform the asphalt removal. Deposition of David Kruse 53:8-54:2 ("Kruse Depo."). However, since there was no National Park Service representative on site to assist the workers by providing "flaggers" and sweepers, the work crew was sent home and the removal of asphalt was not completed until December 13, 2001. Def. Mem. at 5. Defendant has noted that Park Service maintenance crews do not work on Fridays, and therefore that they were not available to assist with the construction on the day work crews first tried to perform the reduction. Id. On November 18, 2001, before crews were able to reduce the height of the speed bump, Plaintiff Jon Buchwald ("Plaintiff") suffered significant injuries when he was thrown from his bicycle while crossing the raised intersection at Bunker Road and Lamoreaux Drive. Pl. Mem. at 3. Plaintiff filed a complaint for damages on November 1, 2002 in the Marin County Superior Court, and on May 10, 2004, Defendant United States removed the action to this Court for all further proceedings. Defendant now moves for summary judgment, claiming that this Court is divested of subject matter jurisdiction based on the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. §2680(a), and that the California Recreational Use Statute requires a claimant in Plaintiff's position to prove willful or malicious conduct on the part of the Defendant, a burden Defendant claims Plaintiff cannot carry. Def. Mem. at 1-2. Although this Court ultimately concludes that Defendant is entitled to summary judgment based on its argument under the California Recreational Use statute, the Court will consider both

4

1  of the government's claims in turn.

2  **III. LEGAL STANDARD**

3      Summary judgment is appropriate only "if the pleadings,

4  depositions, answers to interrogatories, and admissions on file,

5  together with the affidavits, if any, show that there is no

6  genuine issue as to any material fact." <u>Celotex Corp. v. Catrett</u>,

7  477 U.S. 317, 322 (1986).  A genuine issue of fact exists when the

8  non-moving party produces evidence on which a reasonable trier of

9  fact could find in its favor viewing the record as a whole in

10 light of the evidentiary burden the law places on that party.

11 <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252-56 (1986).

12 Summary judgment is therefore appropriate against a party "who

13 fails to make a showing sufficient to establish the existence of

14 an element essential to the party's case, and on which that party

15 will bear the burden of proof at trial." <u>Celotex</u> 477 U.S. at 322-

16 23.  The more implausible the claim or defense asserted by the

17 opposing party, the more persuasive its evidence must be to avoid

18 summary judgment, <u>see</u> <u>Matsushita Electric Industrial Co. v.</u>

19 <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), but "[t]he evidence

20 of the non-moving party is to be believed, and all justifiable

21 inferences are to be drawn in its favor." <u>Anderson</u>, 477 U.S. at

22 255.

23 **IV.  DISCUSSION**

24      A.   <u>Federal Tort Claims Act</u>

25      In passing the Federal Tort Claims Act, 28 U.S.C §§ 1346(b),

26 2671-2680 ("FTCA"), Congress carved out a limited waiver of

27 sovereign immunity for suits for damages brought against the

28                                  5

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

United States where "injury or loss of property or personal injury or death [was] caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 2672.  This waiver of sovereign immunity is limited by what has become known as the discretionary function exception, which expressly prevents the waiver of immunity from applying to "[a]ny claim...based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The exception "restores immunity where [the government's] employees are carrying out governmental or regulatory duties."  Blackburn v. United States, 100 F.3d 1426, 1429 (9th Cir. 1996).

The Supreme Court has set forth a two-part test for determining whether the discretionary function exception applies to divest a court of subject matter jurisdiction.  See Miller v. United States, 163 F.3d 591, 593 (9th Cir. 1998).  First, a court must determine whether the challenged actions "involve an element of judgment or choice."  United States v. Gaubert, 499 U.S. 315, 322 (1991).  Where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the inquiry is over and the discretionary function does not apply, given that the employee had no choice but to obey the

6

United States District Court
For the Northern District of California

binding regulation.  Berkovitz v. United States, 486 U.S. 531, 536 (1988).

If, however, the employee was acting with an element of discretion or judgment, the inquiry moves to the second step and examines whether "the judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322-23.  The exception will protect only those "actions and decisions based on considerations of public policy."  Id. at 323.  Thus, in order to be shielded from liability, the action must be grounded in "social, economic, [or] political policy."  Childers v. United States, 40 F.3d 973, 974 (9th Cir. 1994).  The Court will now consider whether Defendant's allegedly negligent actions are shielded under the discretionary function exception.

1.   Element of Judgment or Choice

The arguments of the parties on the question of whether the allegedly negligent acts involved an element of judgment or choice center around two manuals that govern road design on national highways and in national parks.  The first is the Manual on Uniform Traffic Control Devices ("MUTCD"), published by the United States Department of Transportation.  The MUTCD contains standards for "using signs, signals, and permanent markings on roads and highways."  See Def. Mem. at 3 n. 2; Pl. Mem. at 4.  The other manual that provides guidance with respect to road design in National Parks is the National Park Service Sign Manual, which Defendant asserts compliments, and, in some cases, supersedes the MUTCD.  Kruse Dec. ¶6 n. 1.

7

1    Plaintiff argues that the government was obligated to comply

2  with the MUTCD, which, Plaintiff argues, imposes requirements for

3  road design that deviate from the scheme implemented by the

4  National Park Service in the area of the Bunker Road/Lamoreaux

5  Drive intersection.  Pl. Mem. at 5.  Specifically, Plaintiff

6  argues that the MUTCD requires that the "BUMPS" sign be placed 164

7  feet in advance of the intersection; that the MUTCD requires an

8  "advisory speed plate" to be posted giving notice of a suggested

9  reduction in speed; and that the diagonal white line striping was

10  ineffective because it was "severely deteriorated" and failed to

11  comply with the markings contained in the MUTCD.  Id.; Schultz

12  Dec. ¶10.

13    Defendant counters by noting that the Ninth Circuit's

14  decision in Kennewick Irrigation District v. United States held

15  that a safety standard removes discretion for purposes of the FTCA

16  only "when it is embodied in a *specific* and *mandatory* regulation

17  or statute which creates clear duties incumbent upon governmental

18  actors." 880 F.2d 1018, 1026 (9th Cir. 1989) (emphasis original).

19  The government argues that the MUTCD does not constitute such a

20  specific and mandatory regulation, especially where the National

21  Park Service Sign Manual provides an express grant of discretion

22  to park managers in designing park roads.  Def. Mem. at 8-9.

23    This Court is persuaded that the MUTCD does not provide the

24  kind of mandatory regulations contemplated by the FTCA.  This

25  conclusion is based in part on the language of the MUTCD itself,

26  which, notwithstanding the opinion of Plaintiff's expert that any

27  use of the word "may" in the manual should be construed as

28                                       8

United States District Court
For the Northern District of California

"shall," provides for a degree of discretion and choice in selecting the precise features of road construction.  See, e.g. Schultz Dec. ¶10; Schultz Dec. Ex. B, §3B.27 ("*If used*, speed bump markings...")(emphasis added).  The Court finds further support for this conclusion in the fact that the National Park Service Sign Manual expressly provides that "the MUTCD and this Manual are utilized by the National Park Service to provide for park managers *recommended* standards, specifications and procedures for the NPS sign system," and that "the individual park manager...has the responsibility for determining whether or not a sign is necessary or appropriate at a given location."  Kruse Dec. Ex. 1 (emphasis added).

Although the National Park Service Sign Manual does not reach other decisions that Plaintiff claims were negligent and caused his injuries, such as the decision to construct a dangerously steep speed bump and the failure to construct a dedicated bicycle lane, Plaintiff cannot point to any mandatory regulation that prevents a National Park Service park manager from constructing speed bumps in the manner of the bump at issue in this case, or that requires construction of a dedicated bicycle lane.  See Schultz Dec. Ex. C (guidelines for design of speed humps classified as "a recommended practice").  Accordingly, this Court finds that there is no genuine issue of fact as to the question of whether the government's actions were discretionary, and consequently will now turn to the question of whether these actions are of the sort Congress intended to shield from liability in enacting section 2680(a).

9

1          2.   <u>Susceptible to Policy Analysis</u>

2          With respect to the second prong of the discretionary

3     function exception analysis, the Supreme Court has noted that

4     "[t]he focus of the inquiry is not on the agent's subjective

5     intent in exercising the discretion conferred by statute or

6     regulation, but on the nature of the actions taken and on whether

7     they are susceptible to policy analysis."  <u>Gaubert</u>, 499 U.S. at

8     325.  In order for the exception to apply and shield the

9     government from liability, the discretionary conduct must be the

10    product of a weighing of competing public policy concerns.  <u>See</u>

11    <u>Blackburn</u>, 100 F.3d at 1433; <u>ARA Leisure Services v. United</u>

12    <u>States</u>, 831 F.2d 193, 195 (9th Cir. 1987).

13         Defendant argues that its decisions with respect to

14    installation of the raised intersection and the signs warning of

15    the speed bump are susceptible to policy analysis and are "exactly

16    the type of decision Congress sought to protect from judicial

17    second-guessing."  Def. Mem. at 9 <u>citing</u> <u>Gaubert</u>, 499 U.S. at 322.

18    Although the government attempts to cloak its conduct in the veil

19    of "safety" decisions, this Court is not persuaded that

20    Defendant's decisions to install a speed bump with a 3:1 slope

21    ratio or place a warning sign 98 feet from the intersection

22    involved the balancing of competing policy concerns.

23         Defendant cites <u>ARA Leisure Services</u> for the proposition that

24    "decisions by the National Park Service concerning the design of

25    roads are grounded in policy, and therefore protected under the

26    discretionary function exception...."  Def. Mem. at 9.  The

27    government loads more on <u>ARA Leisure Services</u> than it can bear,

28                                  10

however, given that that case concerned the government's decision to construct roads in Denali National Park without guardrails after having balanced social and political policy concerns as well as considered the Park Service policy requiring roads to be "esthetically pleasing" and to impose minimal impact on the surrounding areas.  ARA Leisure Services, 831 F.2d at 195.  In this case, Plaintiff does not challenge Defendant's decision to control traffic by installing a speed bump, but rather contends that the decision to construct a dangerously steep speed bump without adequate warnings was the direct cause of his injuries. Complaint, ¶6.  This Court finds that the extent to which an approach to a raised intersection is gradual or abrupt is simply not a decision that is subject to social, political, or public policy concerns, and is therefore not the type of conduct Congress sought to protect in enacting the discretionary function exception.  See Gaubert, 499 U.S. at 323.

The same can be said for Defendant's alleged failure to provide adequate warnings of the speed bump.  Ninth Circuit case law makes clear that in failure to warn cases, the discretionary function exception is "limited to those unusual situations where the government was required to engage in broad, policy-making activities or to consider unique social, economic, and political circumstances in the course of making judgments related to safety."  Faber v. United States, 56 F.3d 1122, 1125 (9th Cir. 1995); see also Summers v. United States, 905 F.2d 1212, 1215 (9th Cir. 1990)(failure to warn is not grounded in social, economic, or political policy); Seyler v. United States, 832 F.2d 120, 123 (9th

United States District Court
For the Northern District of California

Cir. 1987) (same).  The Court finds that this is not one of those

"unusual" situations, and therefore holds that the discretionary

function exception to the FTCA does not divest the Court of

subject matter jurisdiction over Plaintiff's claims.  The Court

now turns to Defendant's claims under section 846 of the

California Civil Code.

B.    <u>California Recreational Use Statute</u>

The government also argues that it is entitled to summary

judgment because Plaintiff cannot meet the requirements for

landowner liability under the California Recreational Use statute,

codified at section 846 of the California Civil Code.  Because the

FTCA premises liability on the "law of the place where the action

or omission occurred," 28 U.S.C. §1346(b), California tort law

governs Plaintiff's claims.  <u>See</u> <u>Yanez v. United States</u>, 63 F.3d

870, 872 (9th Cir. 1995).

Like the law of most states, California law imposes a duty on

people, including landowners, to use reasonable care under the

circumstances to prevent injury to others.  <u>See, e.g.,</u> <u>Alcaraz v.</u>

<u>Vece</u>, 14 Cal. 4th 1149, 1156 (Cal. 1997).  California's

Recreational Use statute alters this general rule by immunizing

landowners from liability for injuries suffered by people who use

their land for recreational purposes.  Cal. Civ. Code §846.

Section 846 has several exceptions, however, one of which is

potentially applicable to the facts of this case.[1]  Landowners

___

[1] The other two exceptions apply where the Plaintiff obtains
permission to enter the land in exchange for consideration, or
where the Plaintiff receives an express invitation to enter the
land from the owner.  Cal. Civ. Code §846.  Neither of these

12

**United States District Court**
For the Northern District of California

will not be shielded from liability for injuries suffered by recreational users of their land where the landowner demonstrates "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity...." Cal. Civ. Code. §846. The Recreational Use statute applies to land owned by the United States, and the United States is entitled to rely on section 846 as a defense to actions brought against it for injuries occurring on land owned by the federal government. See <u>Mattice v. United States</u>, 969 F.2d 818, 820-21 (9th Cir. 1992); <u>Rost v. United States</u>, 803 F.2d 448, 450 (9th Cir. 1986); <u>Simpson v. United States</u>, 652 F.2d 831, 833 (9th Cir. 1981).  Plaintiff does not contest that he entered the GGNRA for recreational purposes, thus focusing the dispute on the question of whether the "willful and malicious failure to guard or warn" exception applies to the government's conduct in this case.

Under California law, in order to establish "willful and malicious failure to guard or warn," a plaintiff "must show that the defendant: (1) had actual or constructive knowledge of the peril; (2) had actual or constructive knowledge that the injury was probable, as opposed to possible; and (3) consciously failed to act to avoid the danger." <u>Mattice</u>, 969 F.2d at 822, <u>citing</u> <u>Termini v. United States</u>, 963 F.2d 1264, 1267 (9th Cir. 1992). The question of whether an actor had constructive knowledge is measured against an objective standard, and asks whether a "reasonable man in the same or similar circumstances...would be

exceptions applies in this case.

United States District Court

For the Northern District of California

1  aware of the danger caused by his conduct."  Rost, 803 F.2d at 451

2  (internal quotations omitted).  Because Plaintiff ultimately will

3  bear the burden of establishing the applicability of this

4  exception at trial, the government will be entitled to summary

5  judgment in its favor if it can demonstrate based on the evidence

6  in the record that Plaintiff cannot prevail on any one of these

7  three elements at trial.  See Celotex Corp., 477 U.S. 323.

8      Although Defendant mentions in its moving papers that

9  "plaintiff cannot prove the existence of any of these three

10 factors," Def. Mem. at 13, the government does not otherwise argue

11 that it did not have knowledge of the peril posed by the speed

12 bump.  Indeed, Defendant admits the bump was abrupt, and obtained

13 funding for a third construction effort to plane off layers of

14 asphalt so as to render the bump more gradual.  The Court

15 therefore finds that Plaintiffs have at least raised a factual

16 issue sufficient to defeat summary judgment on this first point.

17     As to the second element of the test for willful or malicious

18 conduct, Plaintiff argues that "it is Kruse's sole declaration

19 that the U.S. relies upon for its assertion that there were no

20 complaints made by bicyclists.  The U.S. cannot fulfill the

21 'ordinary reasonable man' requirement based upon a declarant who

22 has not even seen the complained of dangerous condition."  Pl.

23 Mem. at 19.  Plaintiff has not bothered to cite any authority to

24 support this proposition, and the Court is not aware of any case

25 that precludes considering evidence proffered by an individual who

26 is in a position to know of complaints made with respect to a

27 dangerous condition, but who has not personally inspected the

28                                  14

condition.  In fact, it seems that personal familiarity with an allegedly dangerous condition is less relevant to this second prong of the willfulness inquiry than a witness's position as someone to whom complaints regarding the dangerous condition would be directed.

Nonetheless, the Court is aware of several facts that, taken together, militate in favor of the Plaintiff on this point. First, the government was aware that over 20% of the users of the GGNRA were bicycle riders.  See Declaration of Stephen Purtill, Ex. A ("Purtill Dec.").  Second, Plaintiff has proffered the deposition testimony of Matthew Harrison, an employee of the National Park Service who was working as an officer with the National Park Police in November 2001.  Deposition of Matthew Harrison, 11:14-15, Purtill Dec. Ex. D ("Harrison Depo.").  Mr. Harrison testified that in July 2001, prior to Plaintiff's accident, the Park Service was aware that the raised intersection was potentially dangerous for vehicles and bicyclists in the absence of a speed advisory sign, and that one motorist experienced damage to his vehicle while traveling through the intersection.  Harrison Depo., 15:17-17:16, 20:22-21:6, 14:12-18. Mr. Harrison also testified that on July 6, 2001, at the request of his lieutenant, he authored a hazardous condition report on the raised intersection indicating what the nature of the potential dangers of the intersection were and recommending safety improvements.  Id. at 21:7-10.

The government contests this second point on two grounds: (1) that since the danger of the raised intersection was readily

15

apparent to anyone, it would be unreasonable to conclude that the government had knowledge that Plaintiff's injury was probable, and (2) that the absence of prior similar accidents demonstrates that the government cannot be deemed to have had knowledge that Plaintiff's accident was probable.  Def. Mem. at 13-14.

As to Defendant's first argument, it seems somewhat curious that Park officers would discuss the dangers presented by the raised intersection in meetings and would go so far as to prepare a hazardous condition report if the danger were truly as obvious as Defendant contends.  As to the second argument, the Court declines to endorse Defendant's position, which seems to be that, as a matter of law, no constructive knowledge of probable injury can be found until several similar accidents occur as a result of the same dangerous condition.  In fact, California courts have rejected that very proposition.  See Lostritto v. Southern Pacific Transportation Co., 140 Cal. Rptr. 905, 909 (Cal. Ct. App. 1977) ("the matter of probability is not to be assessed solely by the number of prior accidents, which adventitiously may have been few, but by all the circumstances.").  Instead, this Court finds that, while the facts in this case present a close call as to the second prong of the willfulness inquiry, Plaintiff's proffered evidence and the inferences drawn therefrom demonstrate the existence of a factual issue sufficient to defeat summary judgment on this point.

Finally, the third prong of the willfulness inquiry requires the Court to consider whether Defendant "consciously failed to act to avoid the peril."  Mattice, 969 F.2d at 822.  Although there is no precise test defining what constitutes a "conscious failure to

16

**United States District Court**
For the Northern District of California

act," cases indicate that a defendant will avoid liability under section 846 where he takes <u>some</u> measures to avoid harm, even where more effective measures could or should have been taken.  <u>See id.</u> at 823 (two warning signs and reflectors on a guardrail were sufficient to avoid liability); <u>Grippo v. United States</u>, 911 F. Supp. 437, 441 (D. Nev. 1995) (government did not consciously fail to act where it posted general warnings and erected yellow-tape barricades around a portion of a hazardous condition); <u>Hannon v. United States</u>, 801 F. Supp. 323, 328 (E.D. Cal. 1992) (several warning signs were sufficient to defeat liability even where defendant considered more effective measures of preventing harm but chose not to implement them); <u>see also</u> <u>Alden v. United States</u>, No. C-92-1052, 1993 WL 219286 (N.D. Cal. June 9, 1993)(no conscious failure to act where defendant posted general, as opposed to specific, warning signs).  In contrast, defendants have been found to demonstrate a conscious failure to act where absolutely no measures are taken to prevent the harm.  <u>See</u> <u>Soto v. United States</u>, 748 F. Supp. 727 (C.D. Cal. 1990); <u>McLeod v. United States</u>, No. C-91-3652, 1994 WL 860798 (C.D. Cal. June 30, 1994)

It is on this final point that Plaintiff's evidence and argument fail, and therefore, on this final point that this Court awards summary judgment to the Defendant.  For instance, in his opposition brief, Plaintiff asserts that "the fact that the U.S. failed to appear for the grinding of the bump on November 2, 2001, in and of itself raises a triable issue of fact as to the U.S.'s intent or motive."  Pl. Mem. at 20.  Plaintiff further states that the "BUMPS" sign, faded diagonal striping, and traffic cone

warning of the raised intersection constitute "willfully
misleading and willfully inadequate" steps to avoid the danger,
conduct Plaintiff deems "willfully and intentionally and morally
unacceptable...." <u>Id</u>.  Plaintiff neglects to provide citations to
legal authority that would support these propositions, and in the
absence of any evidence of bad faith by the government, this Court
declines to interpret Defendant's failure to cause a reduction in
the height of the speed bump by the time of Plaintiff's accident
as evidence of a suspect motive or malicious design.  <u>See</u> <u>Richards</u>
<u>v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244 (C.D. Ca.
1985)(parties are obligated to provide a factual predicate from
which inferences can be drawn).  Similarly, the Court rejects
Plaintiff's assertion that the government's attempts to warn users
of the raised intersection constitute evidence that the government
intended to mislead users of the GGNRA with respect to the perils
associated with the speed bump.  There is simply no evidence in
the record to support such a conclusion, and the Court will not
engage in wild speculation in order to create some phantom issue
of fact that would preclude summary judgment. <u>See</u> <u>id.</u>; <u>see also</u>
<u>Anderson</u>, 477 U.S. at 255 (court is obligated to draw *justifiable*
inferences in favor of non-moving party)(emphasis added).

     Rather, the Court notes several salient factors that
demonstrate the government's attempts, however ham-handed, to
mitigate the danger posed by the intersection.[2]  First, it is

_____

     [2] Plaintiff seems to argue, although not directly, that the
government's actions to avoid the peril should not be viewed as a
whole, but rather through a narrow lens focusing on actions taken
after issuance of the hazardous conditions report in July 2001.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  undisputed that the government installed a sign warning of the

2  bump as a part of the initial construction at the intersection.

3  Second, although the parties dispute the effectiveness of the

4  diagonal white lines painted onto the road's surface, the parties

5  do agree that the government put some sort of marking on the

6  asphalt in front of the speed bump, and Plaintiff admits having

7  seen the markings prior to entering the intersection.  <u>See</u>

8  Deposition of Jon Buchwald, 65:4-11, Saltiel Dec. Ex. 2 ("Buchwald

9  Depo.").  Third, although the parties again dispute the

10 effectiveness of the placement and posture of a traffic cone

11 located at the intersection, they do not dispute that a traffic

12 cone was indeed present in the general area of the speed bump.

13 <u>Id</u>.  Finally, and perhaps most importantly, the government

14 procured funding for a third construction project at the

15 intersection and selected a contractor to perform the work that

16 would ultimately render the speed bump safe yet effective.

17 Although the work was unfortunately not performed in time to

18 prevent Plaintiff's injuries, the lack of coordination between

19 Park Service employees and construction crews is, at most,

20 evidence of negligence, and therefore insufficient as a basis for

21

22 However valid this argument may be in a situation where the danger
   to the plaintiff is different from the danger posed to other users
23 of a defendant's land, in this case the nature of the peril was
   virtually identical--a potential for personal injury or property
24 damage.  Thus, the steps taken by the government to avoid the peril
   prior to receiving explicit, written notice of potential danger to
25 bicyclists were precisely the kinds of warnings that would have
   been appropriate after receiving written notice.  Therefore, in
26 deciding whether the government consciously failed to act, the
   Court finds that it is appropriate in this situation to consider
27 all action taken by the government in attempting to prevent harm.

28
                                    19

liability under section 846.

**V.    CONCLUSION**

        In this case the Court grants Defendant's motion because
Plaintiff simply has made no showing that the government
consciously failed to act to avoid harm to users of the Golden
Gate National Recreation Area.  In fact, the government has made a
strong showing that it did act to avoid the peril.  The
government's efforts are sufficient to demonstrate that Plaintiff
cannot prevail on the third prong of the willfulness inquiry under
the California Recreational Use statute.  Accordingly, the Court
hereby GRANTS Defendant United States' motion for summary
judgment.


        IT IS SO ORDERED.


        August 15, 2005                  _____

                                        UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

20